IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PATRICIA ROGERS,

          Plaintiff,

v.                                      CIVIL ACTION NO.   2:22-cv-00499

CRAIG A. TARBOX, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is Defendants Craig A. Tarbox, Riverside Transportation, Inc., and Riverside Transport, Inc.'s ("Defendants") Motion for Partial Summary Judgment. (ECF No. 42.) For the reasons more fully explained below, the motion is **GRANTED**.

                                            I.      BACKGROUND

      On October 23, 2020, Defendant Craig A. Tarbox ("Defendant Tarbox") left a T.J. Maxx distribution center in Evansville, Indiana. (ECF No. 44-3 at 24:15–20.) He was bound for Beckley, West Virginia, hauling a load of merchandise in his tractor-trailer. (*Id.* at 26:4–6.) He drove mostly interstate—that is, until he approached the West Virginia Turnpike. (*See id* at 25:12–19, 28:6–15.) His employer, Defendant Riverside Transportation, Inc., prohibited its drivers from taking toll roads. (*Id.* at 28:16–23.) So, before reaching the first toll booth, Defendant Tarbox departed Interstate-64, opting to take Route 61 the rest of the way. (*Id.* at 28:13–20.)

1

Route 61 differs from the interstate. It's two-lane. (*Id.* at 29:12–14.) The speed limit varies.¹ (ECF No. 44-2 at 21:16–18.) It's chock-full of "switchbacks" and "hairpin curves." (ECF No. 44-1 at 31:8–12; ECF No. 44-2 at 7:16–19.) Tractor-trailers get stuck on it with some frequency. (ECF No. 44-6 at 20:3–19.) Unsurprisingly, there are at least two large signs along Route 61 warning drivers that the road is "NOT SUITABLE FOR LARGE TRUCKS."² (ECF No. 44-1 at 48:4–16; ECF No. 44-7.)

Shortly after turning on Route 61, Defendant Tarbox approached a tight, 90-degree left-hand turn. (ECF No. 44-2 at 9:16–20; ECF No. 44-3 at 29:21–30:2.) He slowed as he entered the turn, although the parties dispute exactly how much. Defendant Tarbox claims that he decelerated to five miles per hour, if not a complete stop. (ECF No. 44-3 at 39:20–24.) Jimmy Canterbury, who was riding in Plaintiff's SUV, says that Defendant Tarbox was still traveling upwards of 25 miles per hour. (ECF No. 44-2 at 22:1–4.) Either way, trouble ensued. The turn was too tight for Defendant Tarbox's tractor-trailer, and he crossed the median. (ECF No. 44-2 at 10:24–11:7.)

Plaintiff was traveling in the opposite lane and watched this scene unfold. On her telling, she "stopped dead in the road" and intended "to put it in 'Reverse' [to] let [Defendant Tarbox] get by, but he just kept coming." (ECF No. 44-1 at 31:18–22.) Defendant Tarbox's trailer and its tires then struck Plaintiff's SUV, sideswiping the entire driver's side. (ECF No. 44-2 at 11:11–

---

¹ The record contains conflicting evidence as to the posted limit where the wreck occurred. According to Plaintiff's deposition testimony, the posted speed limit is 55 miles per hour where the accident occurred. (ECF No. 44-1 at 31:5–7.) Jimmy Canterbury, meanwhile, testified that he believed the speed limit was 25 miles per hour in the area. (ECF No. 44-2 at 21:16–24.)

² Defendant Tarbox does not recall seeing either sign. (ECF No. 44-3 at 42:21–43:3.) However, one such sign is located near Montgomery, West Virginia, through which his toll-free route took him. (ECF No. 44-6 at 18:8–11.) Because Plaintiff is the non-moving party, the Court will infer, as it must, that Defendant Tarbox drove past the sign and thus had reason to know his truck was not suitable for Route 61.

2

21.) The impact sent Plaintiff's SUV to the road's edge, inches from the ditch. (ECF No. 44-1 at 42:6–16; ECF No. 44-8.) Defendant Tarbox came to a stop a short distance up the road. (ECF No. 44-2 at 12:23–13:4.)

Emergency personnel arrived about half an hour later, (ECF No. 44-2 at 15:15–22), and Detective Brian Fernandez ("Detective Fernandez") of the Fayette County Sherriff's Department soon began investigating, (ECF No. 44-6 at 7:2–7). He completed a West Virginia Uniform Traffic Crash Report and recorded both parties' statements. (ECF No. 44-5.) He also determined that Defendant Tarbox (1) had a valid commercial driver's license and (2) was not intoxicated, impaired, or distracted at the time of the wreck. (ECF No. 44-6 at 23:6–22.) In the end, though, Detective Fernandez concluded that Defendant Tarbox "[f]ailed to [k]eep in [the] [p]roper [l]ane" and was entirely at fault. (ECF No. 44-5.) However, despite finding Defendant Tarbox at fault, Detective Fernandez did not issue him a citation or warning. (ECF No. 44-6 at 16:4–8.) As for medical attention, paramedics were on-scene but, according to Detective Fernandez's report, nobody received medical treatment. (*Id.* at 24:4–19.)

Plaintiff filed this civil action in the Circuit Court of Fayette County, West Virginia, on September 22, 2022. (ECF No. 1-1.) She sued Defendants Tarbox, Riverside Transportation, Inc., Riverside Transport, Inc., and John Doe Company. (*Id.*) Her complaint alleges Defendant Tarbox acted negligently and, alternatively, recklessly, and that his employer is vicariously liable for his actions. (*Id.*) Her complaint further alleges that she has suffered personal injuries and property damage because of the wreck. (*Id.*) She therefore seeks compensatory and punitive damages, interest thereon, and attorneys' fees. (*Id.* at 7–8.)

Defendants removed the case to this Court on October 28, 2022, properly invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) Defendants then filed a partial motion to dismiss and strike on November 4, 2022. (ECF No. 4.) This Court, by Memorandum Opinion and Order dated April 7, 2023, denied that motion in its entirety. (ECF No. 17.) Then, on August 17, 2023, Defendants filed a motion for partial summary judgment, asking this Court to dismiss the request for punitive damages only. (ECF No. 42.) Plaintiff responded on August 31, 2023, (ECF No. 44) and Defendants replied on September 7, 2023, (ECF No. 45). As such, the matter is now ripe for adjudication.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue as to any material fact." Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating these factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). "This burden may be met by

4

use of the depositions and other discovery materials." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Should a party fail to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

In West Virginia,

> [a]n award of punitive damages may only occur in a civil action against a defendant if [the] plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code § 55-7-29(a). "This is no easy standard to meet." *Davis v. Milton Police Dep't*, No. 3:20-cv-00036, 2020 WL 2341238, at *8 (S.D. W. Va. May 11, 2020). Indeed, punitive damages awards are "the exception, not the rule." *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 909–10 (W. Va. 2010) (Workman, J., concurring in part and dissenting in part). "[T]he level of bad conduct on the part of a defendant must be very high in order to meet the punitive standard." *Id.* at 910. Simple negligence does not cut it. *Surber v. Greyhound Lines,*

5

*Inc.*, No. 2:06-cv-00273, 2006 WL 3761372, at *4 (S.D. W. Va. Dec. 21, 2006). The defendant's conduct must instead be "extreme and egregious." *Perrine*, 694 S.E.2d at 909.

In automobile accident cases, courts tend to reserve punitive damages for the most egregious of facts.[3] These cases typically feature defendant-drivers that are drunk, speeding, passing when they should not be, or some combination of the three, and oftentimes end up convicted of non-trivial traffic offenses. In *Perry v. Melton*, for example, the defendant, who had a blood alcohol content of .19, tried using the emergency parking lane to pass another vehicle, but instead clipped a tractor-trailer parked on the shoulder, went airborne, and struck another car. 299 S.E.2d 8, 10 (W. Va. 1982). Both drivers died. *Id.* Likewise in *Smith v. Perry*, the defendant, who had also been drinking, was running between 20 to 30 miles an hour over the speed limit—and in a no-passing zone—when he crossed the double-yellow line and hit the plaintiff head-on. 359 S.E.2d 624, 625 (W. Va. 1987) (per curiam). He later pled guilty to reckless driving. *Id.* So too in *Kenney v. Liston*, where the defendant had a blood alcohol content over four times the legal limit and slammed into a stopped car without so much as tapping the brakes. 760 S.E.2d 434, 437 (W. Va. 2014). The defendant pled no contest to driving under the influence. *Id.* Finally, in *Wilburn v. McCoy*, despite having his license revoked for a prior DUI, the defendant nevertheless drove under the influence of several narcotics, hit a car head-on, and then fled the scene. No. 14-0054, 2014 WL 5712761, at *1 (W. Va. Nov. 3, 2014) (memorandum decision).

These cases stand in stark contrast to the garden-variety truck-wreck cases unworthy of punitive damages because, despite causing serious wrecks, the defendant-drivers did not exhibit

---

[3] The Court recognizes that West Virginia Code § 55-7-29(a) altered the punitive damages threshold slightly, *Jordan v. Jenkins*, 859 S.E.2d 700, 723 (W. Va. 2021), but nevertheless finds that pre-2015 punitive damages cases still "provide[] guidance as to when punitive damages are available to a plaintiff." *Billings v. Lowe's Home Ctrs., LLC*, No. 2:18-cv-00039, 2019 WL 1869936, at *5 (S.D. W. Va. Apr. 24, 2019).

extreme and egregious conduct. For instance, in *White v. Swift Transportation Company of Arizona, LLC*, the tractor-trailer driver-defendant was driving below the speed limit, yet still too fast for the snowy conditions, and rear-ended the car ahead of him. No. 1:12-cv-00020, 2013 WL 12108650, at *1 (N.D. W. Va. Mar. 15, 2013). The defendant tested negative for alcohol and controlled substances following the crash. *See id.* Judge Keeley thus dismissed the punitive damages claim because the defendant's "behavior [did not] ris[e] to the required degree of egregiousness." *Id.* at *2. In *Hurley v. Averitt Express, Inc.*, the tractor-trailer driver-defendant went to switch lanes but instead wound up dragging a Saturn sedan 750 feet down the interstate. No. 2:11-cv-00624, 2012 WL 4742274, at *1 (S.D. W. Va. Oct. 3, 2012). The plaintiff presented no evidence that the defendant was impaired, distracted, or acted with malice. *See id.* Judge Copenhaver dismissed the punitive damages claim because, even when viewing the facts in the light most favorable to the plaintiff, they "reveal[ed] no conduct that could satisfy the punitive damage standard." *Id.* at *4.

  The same goes here. For starters, Defendant Tarbox, unlike the drivers in *Melton*, *Smith*, *Kenney*, and *Wilburn*, was not intoxicated or impaired when he caused the wreck. Nor was he speeding. Although the parties dispute his exact speed, viewing the facts in the light most favorable to Plaintiff, Defendant Tarbox was still traveling no faster than 25 miles per hour. Also, Defendant Tarbox did not hit Plaintiff while trying to pass in the wrong place; he simply misjudged the necessary angle to complete a 90-degree turn. Small surprise, then, that Defendant Tarbox was not ticketed, despite Detective Fernandez finding him at fault. Further, in contrast to *Wilburn*, Defendant Tarbox had valid driving credentials and did not try to flee the scene. He instead waited for Detective Fernandez to arrive and fully cooperated with his investigation. In

7

the end, this case is no different than *White* and *Hurley* because it too lacks "the required degree of egregiousness" to "satisfy the punitive damage standard." *White*, 2013 WL 12108650, at *2; *Hurley*, 2012 WL 4742274, at *4.

Plaintiff sees things differently. In her view, punitive damages are warranted here because Defendant Tarbox (1) drove his tractor-trailer on a rural route unsuitable for large trucks to save a few dollars on toll fees, and (2) continued driving over the center line despite seeing Plaintiff in the opposite lane. (ECF No. 44 at 6–12.)

Neither fact warrants punitive damages. Taking things in reverse order, the Court disagrees that Defendant Tarbox's crossing the center line is sufficiently egregious to satisfy § 55-7-29(a). The undisputed facts show that Defendant Tarbox did not hit Plaintiff head-on, or even with the cab of his rig. Only his trailer and its tires made contact with Plaintiff's SUV. Even then, the vehicles only sideswiped one another—that was it. Moving on to Plaintiff's remaining contention, she cites no case where any court has ever awarded punitive damages because a tractor-trailer drove on the wrong road. This Court will not be the first.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment on the issue of punitive damages is **GRANTED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   September 26, 2023

_____
THOMAS E. JOHNSTON, CHIEF JUDGE